**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
EL-SHIFA PHARMACEUTICAL          )
INDUSTRIES COMPANY, *et al.*,    )
                                )
      Plaintiffs,                )
                                )
    v.                           )       Civil Action No. 01-731 (RWR)
                                )
UNITED STATES OF AMERICA,        )
                                )
      Defendant.                 )
_____ )

## MEMORANDUM OPINION

Plaintiffs, El-Shifa Pharmaceutical Industries Company ("El-Shifa"), a stock corporation located in Sudan, and Salah El Din Ahmed Mohammed Idris, owner of the El-Shifa pharmaceutical plant, bring this action against the United States for negligence, trespass, defamation and violation of the laws of nations stemming from the destruction of the plant, its fixtures, equipment and inventory with cruise missiles launched from U.S. naval vessels stationed in international waters. Defendant has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Because plaintiffs have failed to show that the United States has waived its sovereign immunity from suit over these claims, which likely present a non-justiciable political question in any event, defendant's motion to dismiss will be granted.

-2-

BACKGROUND

On or about August 20, 1998, cruise missiles launched from United States naval vessels stationed in international waters destroyed the El-Shifa plant located in North Khartoum, Sudan. (Compl. ¶ 21.)  The U.S. government stated that it carried out the attack in response to the bombings earlier that month of the U.S. embassies in Kenya and Tanzania by terrorists under the direction of Osama bin Laden.  (Id. ¶ 22.)  On the day of the attack, President Clinton, in a televised address, described the El-Shifa pharmaceutical plant as a "chemical weapons-related facility."  (Id. ¶ 27(a).)

Plaintiffs allege that other U.S. officials, including Secretary of State Madeline Albright, made claims that the El-Shifa plant manufactured chemical weapons.  (Id. ¶¶ 27(b)-(c).) Plaintiffs further contend that the determination that El-Shifa was involved with chemical weapons production resulted from negligent testing of soil samples from around the plant, which concluded that the samples contained particular chemicals related to chemical weapon manufacturing.  (Id. ¶¶ 32-33.)  The complaint alleges that U.S. officials also claimed that the El-Shifa plant was a terrorist base of operations and was associated with the Osama bin Laden network.  (Id. ¶ 43.)  Finally, the complaint alleges that U.S. newspapers and other press reported that the

-3-

principal owner of El-Shifa, Salah El Din Ahmad Mohammed Idris, had ties to Osama bin Laden and the Islamic Jihad.  (Id. ¶ 66.)

Four days after the attacks on the plant, the U.S. government froze $24 million in assets held by Idris in a bank located in the United States.  (Id. ¶ 70.)  Plaintiffs filed this action against the United States, citing mounting evidence that the attack was a grievous mistake (Compl. ¶ 74-82), and claiming negligence and trespass under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (2000), defamation and a violation of the law of nations.  (Id. ¶¶ 88-116.)  The government filed a motion to dismiss for lack of subject matter jurisdiction.

<u>DISCUSSION</u>

Under Rule 12(b)(1), "the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." <u>Biton v. Palestinian Interim Self-Gov't Auth.</u>, 310 F. Supp. 2d 172, 176 (D.D.C. 2004); <u>Corel Corp. v. United States</u>, 165 F. Supp. 2d 12, 21 (D.D.C. 2001).  In deciding a motion to dismiss, a court must draw all inferences from the facts alleged in the complaint in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Artis v. Greenspan, 158 F.3d 1301, 1306 (D.C. Cir. 1998).

-4-

I.   TORT CLAIMS

The government argues that this court lacks subject matter jurisdiction because the United States has not waived its sovereign immunity from suit for the claims plaintiff has alleged.  The United States, as sovereign, is immune from suit absent its explicit consent to be sued.  Lehman v. Nakshian, 453 U.S. 156, 160 (1981); Kugel v. United States, 947 F.2d 1504, 1506 (D.C. Cir. 1991).  A waiver of "sovereign immunity must be unequivocally expressed in statutory text" and will be "strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996); see also Cummings v. Dep't of the Navy, 279 F.3d 1051, 1055 (D.C. Cir. 2002).

The FTCA grants federal courts jurisdiction over claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  This waiver, however, is subject to a number of specific exceptions.  See 28 U.S.C. § 2680; see also Industria Panificadora, S.A. v. United States, 763 F. Supp. 1154, 1156 (D.D.C. 1991), aff'd, 957 F.2d 886 (D.C. Cir. 1992)(holding that "[i]f a claim falls within any exception to the FTCA, sovereign immunity has not been waived and the court is without jurisdiction to hear the case").

-5-

In its motion to dismiss, the government argues that the
discretionary function exception bars plaintiffs' claims under
the FTCA.[1]  The discretionary function exception exempts from
coverage of the FTCA:

> [a]ny claim based upon an act or omission of an
> employee of the Government, exercising due care, in
> the execution of a statute or regulation, whether or
> not such statute or regulation be valid, or based
> upon the exercise or performance or the failure to
> exercise or perform a discretionary function or duty
> on the part of a federal agency or an employee of
> the Government, whether or not the discretion
> involved be abused.

28 U.S.C. § 2680(a).  The exception applies only to employee acts
that involve an element of judgment or choice.  United States v.
Gaubert, 499 U.S. 315, 322 (1991).  Moreover, "'even if the
challenged conduct involves an element of judgment,' that
judgment must be 'of the kind that the discretionary function was
designed to shield.'"  Sloan v. U.S. Dep't of Hous. & Urban Dev.,
236 F.3d 756, 760 (D.C. Cir. 2001) (quoting Gaubert, 499 U.S.
at 322-23).  Gaubert noted that the exception was designed to
"'prevent judicial "second-guessing" of legislative and
administrative decisions grounded in social, economic, and
political policy through the medium of an action in tort.'"

---

[1]  The government also argues that the foreign country
exception, 28 U.S.C. § 2680(k), and the combatant activities
exception, 28 U.S.C. § 2680(j), apply to bar suit under the FTCA.
Because the court lacks subject matter jurisdiction under the
discretionary function exception, these two bases for dismissal
need not be addressed.

-6-

Gaubert, 499 U.S. at 323 (quoting United States v. Varig
Airlines, 467 U.S. 797, 814 (1984)).  Therefore, "when properly
construed, the exception 'protects only governmental actions and
decisions based on considerations of public policy.'"  Id.
(quoting Berkovitz v. United States, 486 U.S. 531, 537 (1988)).

     In Saltany v. Reagan, 702 F. Supp. 319 (D.D.C. 1988), aff'd
in relevant part, rev'd in part, 886 F.2d 438 (D.C. Cir. 1989),
residents of Libya sued to recover damages for death, personal
injury and the destruction of property resulting from U.S.
military air strikes on targets in Libya ordered by President
Reagan.  Plaintiffs asserted jurisdiction on various grounds
including the FTCA.  Saltany, 702 F. Supp. at 320.  The court
dismissed the complaint for lack of subject matter jurisdiction,
concluding that none of the statutory provisions relied upon,
including the FTCA, waived the United States' sovereign immunity.
Id. at 321 n.4 (holding that "[t]he Federal Tort Claims Act
expressly preserves the sovereign immunity of the United States
for acts of its officials that involve the exercise of
discretion").  In Industria Panificadora, the court held that the
discretionary function exception applied to preclude challenges
to executive branch decisions concerning the numbers of military
personnel to be utilized, their deployment and the kinds of
orders to be issued during the American military invasion of
Panama.  763 F. Supp. at 1158.

-7-

Here, the President chose to deploy military personnel to take military action against targets in Sudan.  As Commander in Chief of the armed forces, the President of the United States is authorized, but not required, to order military units into action.  See U.S. Const. art. II, § 2; see also Saltany, 702 F. Supp. at 321 (stating that the President "acted with absolute immunity from liability in private civil suits for damages" when he ordered military units into action in his capacity as Commander in Chief of the armed forces).  The President's decision was based upon a judgment - - whether inaccurate or not - - that the El-Shifa plant posed a threat to the national security of the United States.  Saltany, 702 F. Supp. at 321. This decision was a policy judgment protected by the discretionary function exception which renders the United States absolutely immune from suit for this decision.  See Saltany, 702 F. Supp. at 321-22; Industria Panificadora, 763 F. Supp. at 1158.

Plaintiffs argue that their actions for negligence and trespass do not fall within the discretionary function exception to the FTCA because their complaint "challenge[s] the negligent and reckless analyses of the soil sample and other evidence that led the government to conclude that the El-Shifa plant was producing materials for chemical weapons and to target the plant for destruction."  (Pls.' Mem. in Opp. to Mot. to Dismiss ("Pls.' Mem.") at 16.)  They argue that these determinations were

-8-

"factual in nature and did not involve the exercise of any policy judgment." Id.

However, plaintiffs are seeking damages caused by the military force used against the plant that was ordered by the President. The soil sample analysts did not order the destruction of the plant. Plaintiffs' characterization of this action as a challenge to the soil testing results rather than to the President's actions cannot remove this case from resting within an FTCA exception that otherwise applies. See Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 286 (3d Cir. 1995) (holding that the court need not accept plaintiffs' characterization of the facts and that it "know[s] of no authority for the proposition that plaintiffs, by the manner in which they draft their complaints, may dictate that their claims are 'based upon' one government employee's actions and not another's"); see also Gen. Dynamics Corp. v. United States, 139 F.3d 1280, 1283 (9th Cir. 1998) (holding that "[c]ourts are not required to, and should not, simply look at the surface of a complaint for the purpose of ascertaining the true basis of an attack upon something the government has done"); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)(holding that the court need not accept legal conclusions cast in the form of factual allegations). The discretionary function exception to

-9-

the FTCA, therefore, precludes plaintiffs' claims for negligence and trespass.

Plaintiffs' defamation claim also fails because plaintiffs cite to no explicit waiver of sovereign immunity for defamation claims.  Indeed, the FTCA specifically exempts defamation actions from its waiver of sovereign immunity.  See 28 U.S.C. § 2680(h)[2]; Hosey v. Jacobik, 966 F. Supp. 12, 15 n.2 (D.D.C. 1997)(noting that "[t]he statute refers specifically to 'slander' and 'libel.' . . . However, defamation is simply a broader term for slander and libel") (citations omitted); Buss v. United States, 1997 WL 195522, *1 (D.C. Cir. Mar. 5, 1997).

II.  LAW OF NATIONS CLAIM

Plaintiffs seek declaratory relief for the United States' refusal to provide compensation for the destruction of El-Shifa arguing that the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, provides a waiver of sovereign immunity for their violation of the law of nations claims.  (Compl. ¶ 110.) Plaintiffs implicitly assert jurisdiction pursuant to 28 U.S.C. § 1350, the Alien Tort Claims Act (the "ATCA"), when they argue that the defendant has violated the law of nations.  (Compl.

---

[2]  28 U.S.C. § 2680(h) provides in pertinent part: "The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  Id.

¶ 1.)  However, "[t]he Alien Tort Claims Act, which confers
jurisdiction upon U.S. district courts to hear tort claims by
aliens for alleged violations of U.S. treaties and the law of
nations, is not itself a waiver of sovereign immunity, at least
not that of the United States." Saltany, 702 F. Supp. at 320 n.4
(citing Sanchez-Espinoza v. Reagan, 770 F.2d 202, 207 (D.C. Cir.
1985)).

The APA waives sovereign immunity because it provides for
judicial review of federal administrative agency action.  It
provides that "[a] person suffering legal wrong because of agency
action, or adversely affected or aggrieved by agency action
within the meaning of a relevant statute, is entitled to judicial
review thereof." 5 U.S.C. § 702.  The APA, however, provides for
judicial review only of final agency action.  5 U.S.C. § 704.
See e.g. Tulare County v. Bush, 185 F. Supp. 2d 18, 27 (D.D.C.
2001), aff'd, 306 F.3d 1138 (D.C. Cir.), cert. denied, 540 U.S.
813 (2003).  Because "the President is not an agency within the
meaning of the Act," Franklin v. Massachusetts, 505 U.S. 788,
796 (1992), "presidential actions are not subject to review
pursuant to the APA." Tulare County, 185 F. Supp. 2d at 28; see
also Dalton v. Specter, 511 U.S. 462, 470 (1994).  Here, the
action in question is the President's decision to target and
strike El-Shifa.  Because the APA does not provide a waiver of
the United States' sovereign immunity from challenges to

-11-

presidential decisions, the APA does not grant this court subject matter jurisdiction over the law of nations claim.

III. NONJUSTICIABLE POLITICAL QUESTION

The government also argues that plaintiffs' action should be dismissed because it involves a nonjusticiable political question.  "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."  Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986).  Political questions have been described as "'political act[s], belonging to the executive department alone for the performance of which entire confidence is placed by our constitution in the supreme executive; and for any misconduct respecting which, the injured individual has no remedy . . . .'"  Antolok v. United States, 873 F.2d 369, 379 (D.C. Cir. 1989) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 164 (1803)).  Federal courts are not prohibited in all instances from reviewing cases that may touch on sensitive political, military or foreign policy issues.[3]  Baker v. Carr,

_____

[3] The courts have determined, for example, that the president cannot seize private steel mills even during a time of war, Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952), that the Secretary of Commerce was required to certify that Japan's whaling practice caused an international treaty to be less effective, Japan Whaling Ass'n, 478 U.S. 221, that the executive branch must allow a citizen detained as an enemy

-12-

369 U.S. 186, 211 (1962).  The judiciary, however, is considered
"particularly ill suited to make such decisions, as courts are
fundamentally underequipped to formulate national policies or
develop standards for matters not legal in nature."  Japan
Whaling Ass'n, 478 U.S. at 230 (internal quotations omitted).

    Nonjusticiablility, as defined by the Supreme Court, is "the
inappropriateness of the subject matter for judicial
consideration."  Baker, 369 U.S. at 198.  The Baker Court
identified the following elements of nonjusticiable political
questions:

> Prominent on the surface of any case held to involve
> a political question is found [1] a textually
> demonstrable constitutional commitment of the issue
> to a coordinate political department; or [2] a lack
> of judicially discoverable and manageable standards
> for resolving it; or [3] the impossibility of
> deciding without an initial policy determination of
> a kind clearly for nonjudicial discretion; or [4]
> the impossibility of a court undertaking independent
> resolution without expressing lack of the respect
> due coordinate branches of government; or [5] an
> unusual need for unquestioning adherence to a
> political decision already made; or [6] the
> potentiality of embarrassment from multifarious
> pronouncements by various departments on one
> question.

Id. at 217.  If even one of these elements is present, "then
adjudication of the case may be said to require resolution of a
political question, which is nonjusticiable and hence not

_____

combatant the right to challenge his classification under due
process, Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004), and that
the manual recounting of votes for a contested presidential
election must stop.  Bush v. Gore, 531 U.S. 98 (2000).

-13-

reviewable by a court." Industria Panificadora, 763 F. Supp.
at 1159 (citing Baker, 369 U.S. at 217).

"It is well established that decisions pertaining to
national security, such as whether and how to use military
forces, are entrusted to the political branches." Id. at 1159-
60; see also Haig v. Agee, 453 U.S. 280, 292 (1981) (recognizing
that "[m]atters intimately related to foreign policy and national
security are rarely proper subjects for judicial intervention").
Article II, § 2 of the Constitution provides that "the president
shall be Commander in Chief of the Army and Navy of the United
States, and of the Militia of the several States." U.S. Const.
art. II, § 2.  See Schneider v. Kissinger, 412 F.3d 190, 195
(D.C. Cir. 2005) (noting that "Article II . . . provides
allocation of foreign relations and national security powers to
the President, the unitary chief executive"); DaCosta v. Laird,
471 F.2d 1146, 1154 & n.13 (2d Cir. 1973) (noting that the
Constitution has a "specific textual commitment of decision-
making responsibility in the area of military operations in a
theatre of war to the President, in his capacity as Commander in
Chief").  As for foreign policy, the President possesses
"'plenary and exclusive power' in the international arena" and
acts "'as the sole organ of the federal government in the field
of international relations.'"  Schneider, 412 F.3d at 195

-14-

(quoting <u>United States v. Curtiss-Wright Export Corp.</u>, 299 U.S. 304, 320 (1936)).

The bombing of the El-Shifa pharmaceutical plant was the type of policy decision that the government argues is textually committed to the Executive branch by the Constitution.  The text of the Constitution commits to the executive exclusively a decision to engage the military on foreign soil in protection of national security.  U.S. Const. art. II, § 2; <u>Schneider</u>, 412 F.3d at 195.  The plaintiffs claim that they ask the court only to "determine whether a pharmaceutical plant was mistakenly identified as a chemical weapons facility[,] ... whether Mr. Idris was recklessly defamed" and "whether the law of nations was violated."  (Pl.'s Mem. at 29.)  However, a jurisdictional bar posed by the political question doctrine is not avoided by framing the claims using common tort principles.

With the complaint viewed as essentially challenging President Clinton's decision that El-Shifa was a threat to the nation's security, the second element articulated in <u>Baker</u> is also applicable because no judicially discoverable and manageable standards exist for a judicial assessment of that decision. Certain "decisions which affect our national security involve policy decisions beyond the scope of judicial expertise." <u>Industria Panificadora</u>, 763 F. Supp. at 1160.  For this court "[t]o attempt to decide such a matter without the necessary

expertise and in the absence of judicially manageable standards
would be to entangle the court in matters constitutionally given
to the executive branch." In re Korean Air Lines Disaster, 597
F. Supp. 613, 616 (D.D.C. 1984), aff'd, 829 F.2d 1171 (D.C. Cir.
1987).  Federal courts also lack the resources to evaluate so
many of the executive's policy decisions on issues of national
security, foreign relations, or military engagement.  "[T]he
judiciary has no covert agents, no intelligence sources, and no
policy advisors[,]" thus rendering the courts "ill-suited to
displace the political branches in such decision making[.]"
Schneider, 412 F.3d at 196; Crockett v. Reagan, 720 F.2d 1355,
1356 (D.C. Cir. 1983) (concluding that "the war powers issue
presented a nonjusticiable political question" and the "court did
not have the resources or expertise to resolve the particular
factual disputes involved").

Even if the court were able to determine that a government
employee was negligent in taking a soil sample, courts play no
role in evaluating the reliability or the truthfulness of the
executive's own intelligence, nor do courts substitute their
judgment for the executive's in weighing or evaluating the
information used in coming to a policy decision.  See El-Shifa
Pharm. Indus., Inc. v. United States, 378 F.3d 1346, 1365 (Fed.
Cir. 2004)(noting that "the federal courts have no role in
setting even minimal standards by which the President, or his

commanders, are to measure the veracity of intelligence gathered")[4]; Industria Panificadora, 763 F. Supp. at 1160-61 (holding that allegations of negligence on the part of government personnel in failing to provide adequate numbers of police to maintain public order during the invasion of Panama presented a nonjusticiable political question).

The executive's determination that the pharmaceutical plant was a chemical weapons-related facility appears equally unreviewable.  This designation, erroneous though it may have been, was made as part of a military response to the terrorist bombings of the U.S. embassies in Kenya and Tanzania.  (Compl. ¶ 22.)  It is this type of delicate decision regarding national security, foreign relations, and global politics that is entrusted to the sole discretion of the executive.  See People's Mojahedin Org. of Iran v. U.S. Dep't of State, 182 F.3d 17, 23 (D.C. Cir. 1999) (holding that the Secretary of State's determination that the terrorist activities of two organizations "threaten[] the security of United States nationals or the national security of the United States" is a nonjusticiable political question, but reviewing whether the Secretary of State

_____

[4] That Federal Circuit case involves the same parties and underlying facts as does the instant case, and the Federal Circuit affirmed the dismissal of the case based on the political question doctrine.  Given this court's disposition of this case, it is not necessary to address issue or claim preclusion stemming from the Federal Circuit's opinion.

-17-

made findings that the organizations were foreign and that they engaged in terrorist activities before designating the organization terrorist as mandated by the Antiterrorism and Effective Death Penalty Act).  Even in the case of a reviewable designation that touches on national security and foreign relations, the Supreme Court has emphasized that "our Constitution recognizes that core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them."  Hamdi, 542 U.S. at 531 (holding that a citizen "seeking to challenge his classification as an enemy combatant" has a right to due process.)

Finally, review of the President's decision to bomb the plant and the underlying factual basis for it without any judicially manageable standards could involve a policy determination beyond the court's discretion to make.  A judicial inquiry into the reasonableness of the judgments made regarding the El-Shifa plant could mimic the executive's role in formulating foreign policy, could improperly interfere with the executive's role in commanding the country's military forces, and could require an inappropriate second-guessing of executive branch decisions.  Industria Panificadora, 763 F. Supp. at 1161 (noting that "an independent resolution would show a lack of respect due to a coordinate branch").

-18-

The true nature of plaintiffs' action is for damages arising out of the destruction of El-Shifa and the statements made by U.S. officials to justify the military action.  (Compl. ¶ 1.) Although plaintiffs have characterized their claims using traditional tort vocabulary, "their allegations implicate broader political questions that encompass U.S. foreign policy and military operations."  <u>Industria Panificadora</u>, 763 F. Supp. at 1161.  The plaintiffs' claims likely present a nonjusticiable political question over which the court would lack jurisdiction.

<u>CONCLUSION</u>

Plaintiffs have failed to show that the United States has waived its sovereign immunity regarding the claims asserted in this action.  In addition, this action likely presents a non-justiciable political question.  Because this court lacks subject matter jurisdiction over plaintiffs' claims, the complaint will be dismissed.  A final Order accompanies this Memorandum Opinion.

SIGNED this 29th day of November, 2005.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge